FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

20 NOV 19  AM 11: 05

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

THE UNITED STATES OF AMERICA For )
The Use And Benefit OF THE WILSON )
GROUP, )
       )
      **PLAINTIFF,** )
       )
**V.** )
       )
**M. A. MORTENSON COMPANY, FEDERAL** )
**INSURANCE COMPANY, and TRAVELERS** )
**CASUALTY AND SURETY COMPANY OF** )
**AMERICA,** )
       )
      **DEFENDANTS.** )

CIVIL ACTION
NO. __3:20-cv-777 DJH__

JUDGE: __D. HALE__

### COMPLAINT

COMES NOW the Plaintiff, The United States for the use and benefit of The Wilson

Group (Wilson) and files it's Complaint against the Defendants, M. A, Mortenson Company

(Mortenson), Federal Insurance Company (Federal), and Travelers Casualty and Surety Company

of America (Travelers), and, in support of It's Complaint, states the following:

### JURISDICTION

1.

This Complaint is being brought pursuant to 40 U.S.C. 3131, The Miller Act.

2.

On 23 March, 2017, the Defendant, Mortenson, entered into a contract with the U.S.

Army Engineer District, Louisville, Louisville, KY, to provide architectural and/or engineering

services and to perform labor and furnish material for the construction of a Medical Center

Replacement located at Wilson Road & Spearhead Division Ave., Fort Knox, Ky.

1

3.

Pursuant to 40 U.S.C. 3131, the Defendant, Mortenson was required to provide Payment and Performance Bonds. The required bonds were provided by Defendants, Federal and Travelers.

4.

On 31 August, 2017, the Defendant, Mortenson signed a subcontract with the Plaintiff for the furnishing and installation of all curtainwall, windows, glass & glazing work included in attached specifications. As such, the Plaintiff has a direct contractual relationship with the Defendant, Mortenson.

5.

During the performance of the contract certain disputes arose between the Plaintiff and Mortenson. The Plaintiff furnished a detailed listing of the disputes and the amounts the Plaintiff contended that it was owed from Mortenson within Ninety (90) days of the last day of furnishing goods and services. This Complaint is filed within one (1) year of the last date of furnishing goods and services on the subject contract. Therefore, this Court has jurisdiction to hear this matter.

**VENUE**

6.

40 U.S.C. 3133(b)(3)(B)  requires that any Complaint filed pursuant to the Miller Act be filed in the District Court having jurisdiction over the area where the contract was performed. Plaintiff states that Fort Knox, Ky, is located within the jurisdiction of the U.S. District Court, Western District, therefore, venue is properly in this Court.

2

## FACTS

### 7.

As stated, above, the Plaintiff signed a "M.A. Mortenson Company Subcontract

Agreement For Design-Build Contracts" on 31 August, 2017. Mortenson had signed a contract

with the U.S. Army to design and build a new Medical Clinic at Fort Knox, KY. Plaintiff's

subcontract provided that it "...shall furnish and install all curtainwall, windows, glass and

glazing included in the following Specification Sections in strict accordance with the drawings,

specifications, and other Contract Documents listed in Exhibit D:" The Specification Sections

included 08 44 00, 08 51 13, and 08 81 00.

### 8.

Included in the Scope of Work was a list of "Specific Inclusions" which detailed the

portions of the contract that were to be performed by the Plaintiff. In addition to the specific

portions of the contract to be performed, this section, at Paragraph 9., stated:

> "9. Windows are anticipated to be installed before completion
> of masonry veneer and metal wall panel work. Subcontractor shall
> provide a recommendation of protective film over exterior
> portion of window to protect window from damage to be
> Provided by other trades."

### 9.

The "Specific Inclusions" also included the following:

> "11.    Subcontractor shall furnish and install one 2 X 2'
> window in project site exterior wall mockup. Window
> shall be representative of production windows to be
> installed in facilities. Installation, flashing, and
> weather tightness components of the mockup will
> be the same at the windows to be incorporated into
> the work. Window installed in mockup will be

Subjected to water leak testing by others.

12.     Subcontractor shall furnish and install one 2 X 2' Sample section of curtainwall in the exterior wall mockup. Installation, flashing, and weather tightness components of curtainwall mockup will ne the same as those to be incorporated in the work. Curtainwall section shall be subjected to water leak testing. Mockup section shall contain a minimum of one Horizontal and vertical mullion."

10.

The testing of the windows was specified as follows:

"13. Leakage testing of windows and curtainwall systems will be by others. The following window types and quantities will be tested:

      a. Mockup - All windows and curtainwalls installed in mockup

      b.     Curtainwalls, storefronts, sloped glazing - 1 of each type of system installed in Work. Testing by AAMA 501.2 procedures.

      c.     Windows - 1 window per 50 windows per Manufacturer series installed in Work.

14.     Failure of leakage testing will result in retesting of original window, curtainwall, or storefront after corrective action has been taken, along with two additional windows of the same type. Costs associated with retesting will be the Responsibility of the Subcontractor."

11.

Exhibit C "Schedule" read, in part:

"Subcontractor recognized the project's Contract Completion date is **26 April 2021** and has incorporated this date into the development of its Subcontract Price.

The following schedule electrical milestones dates are applicable to this Agreement:

4

Shop Drawings-4-6 weeks from issuance of 65% Design Drawings
Fabrication-10-12 weeks from Approved Shop Drawings
Mock-Up Materials Onsite - Finish 4/2/18
Exterior Window Installation - Start 8/19/18
Curtainwall Installation - Start 9/18/18
Exterior Openings Complete - Finish 10/26/18

12.

Under the Subcontract "Standard Terms and Conditions", under Paragraph 8.8 the

Subcontract stated:

> "8.8     Mortenson will establish a limited number of initial
> control points, grid lines, benchmarks or other datum points
> for the use and reference of Subcontractor. Subcontractor
> Shall be responsible for all subsequent layout, surveying
> and dimensional control required to perform the Work,
> and shall preserve or restore any initial layout disturbed
> or removed by Subcontractor. Notwithstanding
> dimensions given in the Drawings, Specifications and other
> Contract, Subcontractor shall take all measurements and
> establish all dimensional controls necessary to insure
> proper matching and fitting of the Work."

13.

Paragraph 8.8 of the "Subcontract Supplementary Terms and Conditions states:

> "Subcontractor is responsible for verifying and coordinating
> all field dimensions to ensure the proper fit and alignment
> of the Work. Subcontractor is responsible for coordinating
> and laying out openings in work of other subcontractors,
> in order to accommodate Subcontractor's work. **Mortenson
> to guarantee rough opening dimensions for windows and
> provide make size for hollow metal and door glazing.
> Curtainwall openings to be ready for field measuring
> by 5/19/18 or Mortenson will guarantee to rough opening
> sizes**. (*Emphasis added)* Parties will mutually work together
> on field measuring and scheduling for the benefit of both
> parties."

17.

According to the contract schedule, above, the "mock-up" of the windows was to be

performed by 2 April, 2018. The mock-up is a small replica of how the windows will be

constructed, including type of glass, framing, and sealant. It could not be performed on-site until

the design drawings were approved and Mortenson was prepared to inspect the mock-up. Rather

than in March, the actual on-site mock-up, after two schedule changes. Did not occur

until 26 September, 2018, some six (6) months after the contract schedule.

18.

Even though there was the extended delay, the September mock-up did not include all of

the windows that were to be installed. Mortenson was notified by the Plaintiff that there had been

no change order to extend the schedule or any time set for the mock-up for the remaining

windows. In addition, when the Plaintiff arrived on site, it was discovered that the sizes of the

widows had changed from that previously planned.

19.

When the Plaintiff began reviewing the installation sites, it was discovered that the sizes

of the windows, including the curtainwalls varied considerably from the sizes reflected in the

design drawings and "guaranteed" by Mortenson. The contract guaranteed the rough opening

sizes because the Plaintiff had to order the glass in the sizes to be installed as the glass could not

be either manufactured or cut to size on site. The difference between the design window and

curtainwall sizes and the actual openings increased the number of windows to be ordered by a

factor of at least eight (8) to ten (10) times. This also delayed the work as the Plaintiff had to wait

until it had an actual measurement for each window or curtainwall to fabricate the aluminum

6

framing before ordering the glass, rather than order off of the drawings and store the aluminum framing and glass ready for installation.

20.

During the next month there were many discussions as to the inconsistent dimensions and the delays caused by the difference between the drawings and actual window sizes. Even though the delays were caused by these differences and the violation of the "guarantee" provision in the contract, Mortenson kept insisting that the Plaintiff maintain the schedule in spite of the acceleration and extra work it caused. The delays also moved the Plaintiff's work into the winter, which had not been originally planned in the original price.

21.

One of the major duties of the General Contractor (Mortenson) is to coordinate the various trades on the project. As this was the construction of a new building, other trades such as wall construction, masons, electrical, sheet rocking, and others, affected the rate and ability of the Plaintiff to perform it's work. Scaffolding was installed over the windows and curtainwalls and prevented the Plaintiff from work. The masons installed works and other exterior coverings over the edges of the windows and curtainwalls requiring the Plaintiff to remove them to install it's glass. The masons also broke the edges of some of the glass that had been installed requiring the Plaintiff to reorder windows, further delaying the completion of the project. Generally, Mortenson failed to coordinate the other trades so that they did not interfere with the Plaintiff's work.

22.

Once the mock-ups had passed water test per AMMA 501 on 9 November, 2018,

7

installation began. Once installed, the windows had to be tested. The contract called for a water pressure test and specified the force of the testing procedure. It also called for Mortenson to subcontract to others the final exterior bead of sealant to the windows. The tests were not supposed to be performed unless all of the sealing was performed, including that to be installed by others. During January and February of 2019, several water test were performed that failed. Most of these test failed because either the exterior bead of sealant had not been installed or the water pressure used exceeded that required in AMMA 501. This further delayed the installation and required additional testing in March and April, 2019.

23.

Work continued until 28 June, 2019, when all windows were initially installed. Water tests were then conducted with most passing the tests. However, in August, Mortenson ordered the Plaintiff to re-glaze the entire curtainwall system despite the fact that most of it had passed the leak tests and the Mortenson superintendent advised against it. During this re-glazing the windows had to be removed which resulted in some of the glass being broken and having to be replaced. This greatly increased the lead time and labor costs as the Plaintiff had to hire subcontractors to assist in the removal, re-sealing, and re-installing of all of the glass. The Plaintiff finally finished all of its work on 26 November, 2019.

24.

In spite of the fact that the Plaintiff has completed all of the work under its' subcontract and its' work has been accepted by the owner, Mortenson has refused to pay the Plaintiff the remaining amounts due on its subcontract.

8

## COUNTS

### COUNT I: BREACH OF CONTRACT:

### VIOLATION OF GUARANTEED WINDOW SIZES

25.

As stated above, the Supplementary Terms and Conditions at Paragraph 8.8 states that the rough openings for the windows and curtainwalls as reflected in the design documents were guaranteed to be accurate. The Plaintiff depended on this guarantee to price its subcontract. It expected that it could pre-order the glass and framing from its sources and warehouse them for use when needed. However, when they arrived on site and took the actual field measurements, they discovered that, rather then fifteen (15) to twenty (20) different window sizes, there were almost One Hundred and Fifty (150) different sizes.

26.

This difference in window sizes from the design documents to the field required that the Plaintiff had to first take the field measurements and then order the glass to fit the opening. While the contract required the Plaintiff to verify field measurements to ensure that the designs were correct, it did not require the Plaintiff to individually order each and every window. This violation of the contract provisions increased the cost of the materials to be utilized by the Plaintiff, increased the labor costs, and delayed the performance thereby increasing the administrative costs to the Plaintiff.

27

Because of the difference between the design and the field sizes, the Plaintiff was required to conform the glass ordered to the new sizes which delayed the installation. This

included demobilizing and remobolizing labor, re-ordering and cutting of aluminum framing and extended General Conditions. The Plaintiff states that this additional work added the sum of Sixty-one Thousand, Five Hundred and fourteen Dollars and Sixty-five cents ($61,514.65) to the contract.

## COUNT II: DELAYS

28.

In addition to the delays caused by the difference between the window sizes in the designs and the actual field sizes, stated above, the Plaintiff was delayed in its performance in several other ways. The initial performance of the mock up was delayed from April to September, 2018. This caused extra costs to the Plaintiff in redirecting its labor, finding other work to fill the months in which the Plaintiff expected to work, and extra administrative and planning costs.

29.

The Plaintiff also was delayed by other trades, improper testing and directions by Mortenson. The Quality Assurance of Mortenson, and others, was either poorly trained or did not perform their jobs properly. Defects in the work of others was not properly identified and transmitted to the Plaintiff so that work could be properly planned. Testing was performed improperly and then Mortenson assigned excessive supervisory personnel that delayed the Plaintiff in both the initial installation and the re-installation of the windows.

30.

The Plaintiff estimates that the initial delay in beginning the contract caused inefficiencies in other projects to keep crews working, material lead times extended, impact by other trades, acceleration of the work at Fort Knox, extension of the work into winter conditions,

10

which were not planned, and loss of efficiency. Plaintiff estimates that these delays added the

sum of Thirty Thousand Dollars. ($30,000.00)

31.

After the water test dispute. Mortenson directed methods and limited progress costing the

Plaintiff an extra Sixteen Thousand and Seven Dollars and Twenty-three Cents ($16,007.23).

This brought the total for delays cause by Mortenson to Forty-six Thousand, Seven Dollars and

Twenty-three Cents. ($46,007.23)

### COUNT III: COSTS FOR IMPROPER TESTING

32.

The improper testing discussed above resulted in the Plaintiff being ordered to add sill

foam which was not required by the contract or the testing results. The Plaintiff was also directed

to increase the opening perimeter filler which was also not required by the contract or the testing

results. This increased the costs to the Plaintiff by an estimated Twenty-six Thousand, Five

Hundred and Forty-six Dollars and Fourteen Cents ($26.546.34)

33.

### COUNT IV: DIRECTION TO RE-GLAZE CURTAINWALL

On 1 August, 2019, the Plaintiff was directed to completely reglaze the curtainwall. In

order to conform to the improper direction, Plaintiff was required to remove the existing glass

which resulted in some breakage resulting in having to reorder glass and aluminum framing,

hiring subcontractors, remobolizing crews, extra costs for travel, food and lodging, and other

costs. Plaintiff contends that this added the sum of Two Hundred and One Thousand, Four

Hundred and Forty-eight Dollars, and Fifty-five Cents ($201,448.55) to the contract costs.

11

## COUNT V: BREACH OF CONTRACT: FAILURE TO PAY

34.

The Plaintiff contends that it has completed its work and its work has been accepted by the owner. However, Mortenson has failed to pay the Plaintiff the full value of its contract. It is the assertion of the Plaintiff that it is owed the amount of Two Hundred and Thirty-nine, Four Hundred and Thirty-two Dollars and Twenty-four Cents ($239,432.24) on its contract.

## PRAYER FOR RELIEF

The Plaintiff hereby respectfully requests that Service be made on the Defendants of its Complaint and that they be required to Answer in accordance with the Federal Rules of Civil Procedure. Plaintiff also requests that after a trial of the issues and a verdict in favor of the Plaintiff that the Plaintiff be awarded the full amounts listed in Counts I through V, plus any and all costs of litigation including legal fees.

Submitted, this the 26th day of November, 2019.

Respectfully Submitted;
J. HATCHER GRAHAM, P.C.


J. Hatcher Graham
Georgia Bar No. 304577

303 Pheasant Ridge Drive
Warner Robins
Georgia        31088
(478) 396-6778
govlaw@cox.net

12

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

The United States For The Use And Benefit of
The Wilson Group

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

J. Hatcher Graham, 303 Pheasant Ridge Drive
Warner Robins, GA 31088; 478-396-6778

## DEFENDANTS

M. A. Mortenson Company, Federal Insurance Company
and Travelers Causualty and Surety Company of America

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

3:20-cv-777-DJH

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| [x] 130 Miller Act | 315 Airplane Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | **PERSONAL PROPERTY** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 370 Other Fraud | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 371 Truth in Lending | | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 380 Other Personal Property Damage | **LABOR** | 490 Cable/Sat TV |
| 196 Franchise | | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 850 Securities/Commodities/ Exchange |
| | | | 720 Labor/Management Relations | **SOCIAL SECURITY** | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 740 Railway Labor Act | 861 HIA (1395ff) | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 751 Family and Medical Leave Act | 862 Black Lung (923) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 865 RSI (405(g)) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | 870 Taxes (U.S. Plaintiff or Defendant) | 950 Constitutionality of State Statutes |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | 871 IRS—Third Party 26 USC 7609 | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
40 U.S.C. 3131

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____